**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                        **3:03cr127/LAC**
                                               **3:06cv195/LAC/MD**

**CHRISTOPHER DEES**

---

### REPORT AND RECOMMENDATION

      This matter is before the court upon an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 414).  The government has filed a response (doc. 418) and the defendant has filed a reply  (doc. 429).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I.  BACKGROUND

      Defendant and eight others[1] were charged in a single count indictment dated October 22, 2003 with conspiracy to possess with intent to distribute five kilograms

---

[1]The other co-defendants were James D. Warren, Fitzgerald Anderson, Terry M. Newkirk, Robert Pettway, Bryan O. Johnson, Michael V. Newell, Jackey T. Houston and Edward K. Newell.  All defendants except this defendant and Pettway pleaded guilty.  Defendant Pettway was convicted after a jury trial.

or more of cocaine and 50 grams or more of cocaine base.  (Doc. 1).  Defendant was arrested in January of 2004, and counsel was appointed to represent him.[2]  The government filed two identical notices of enhancement indicating that the government intended to seek enhanced penalties due to the defendant's two prior felony drug convictions.  (Doc. 36, 60).[3]  Prior to trial, the government also filed a notice of intent to use Rule 404(b) evidence concerning other crimes.  (Doc. 126).

Following a jury trial, defendant was convicted as charged, and the jury specifically found that the offense conduct involved five kilograms or more of a mixture or substance containing a detectable amount of cocaine and 50 grams or more of a mixture or substance containing cocaine base.  (Doc. 151).

In the PSR, defendant Dees was held accountable for 17.76 kilograms of cocaine and 7,624 grams or 7.6 kilograms of cocaine base which converted to 156,302 kilograms of marijuana.  This resulted in a base offense level of 38.  He received a two level upward adjustment for a co-conspirator's possession of a firearm during the course of the conspiracy for a total offense level of 40.  His criminal history category was IV and the applicable guidelines range was 360 months to life imprisonment.   Because 21 U.S.C. § 841(b)(1)(A) mandates a mandatory life sentence, the guideline range is that which is prescribed by statute pursuant to §5G1.1(b), U.S.S.G. The objections to the PSR include the notation that "by his own admission, Dees stated he is responsible for 17.76 kilograms of cocaine powder.   Dees is also not disputing prior convictions cited in the Notice of Enhancement."  (PSR ¶ 108).

At sentencing defendant neither affirmed nor denied the previous convictions listed in the notice of enhancement.  (Doc. 339-6-7).  The government proved the

---

[2]Patrick Jackson represented the defendant at trial, and Steven Sutherland represented him at sentencing, after Mr. Jackson moved to withdraw.

[3]One was filed in open court during defendant's arraignment, and one was filed with the clerk's office on January 20, 2004.

convictions by linking defendant to the convictions of record through comparisons of defendant's fingerprints to those associated with the previous convictions. (Doc. 339 at 12). Defendant was sentenced to the statutorily required term of life imprisonment. (Doc. 339 at 14-15). Defendant appealed, raising several grounds. First he challenged the sufficiency of the evidence, claiming that because there was no independent evidence corroborating the testimony of the witnesses and no discrepancy in the overall testimony of each witness, their testimony was likely fabricated. He also argued that the district court abused its discretion by admitting the 404(b) evidence. Finally, he argued that the district court erred by not ruling on and removing a two-level enhancement for possession of a firearm by a co-conspirator as this affects the determination of his incarceration facility. The Eleventh Circuit found no merit to any of his contentions, and affirmed his conviction and sentence on April 29, 2005. (Doc. 400). Defendant did not file a petition for certiorari with the Supreme Court, and the mandate issued on June 1, 2005. Both the initial and the amended motions were timely filed pursuant to the prison mailbox rule. *See Clay v. United States,* 527 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003).

In his amended motion to vacate, set aside or correct his sentence, defendant claims that his appointed counsel was constitutionally ineffective in several respects. The government opposes the motion in its entirety.

## II. LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199

(11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).  When examining the performance of an experienced

trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Secretary for Dept. Of Corrections,* 480 F.3d 1092 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

### 1.  Racial strikes of jurors

Defendant first contends that counsel was ineffective because he allowed the government to strike two African-Americans during jury selection without any explanation.  He maintains that he "requested" counsel to select these two individuals as jurors, and appears to believe that his desire that African-American jurors serve on his petit jury should have sufficed to empanel these two individuals. However, as set forth below, the defendant has failed to provide any specific information or argument from which the court can infer that counsel's performance was in any way deficient.

The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have committed."  However, this is not tantamount to a guarantee that a criminal defendant will be tried by a jury comprised of citizens from the defendant's neighborhood.  The Supreme Court has stated: "in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition."  *Holland v.*

*Illinois*, 493 U.S. 474, 110 S.Ct. 803, 808-809 (1990) (quoting *Taylor v. Louisiana*, 419 U.S. 522 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975)); accord, *Duren v. Missouri*, 439 U.S. 357, 363-364, and n. 20, 99 S.Ct. 664, 668, and n. 20, 58 L.Ed.2d 579 (1979).[4] Defendant suggests that the prosecution used its peremptory strikes in a discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).   To determine whether there has been an Equal Protection violation under *Batson*, the court employs a three-part test. *Central Alabama Fair Housing Center, Inc. v. Lowder Realty*, 236 F.3d 629, 636 (11th Cir. 2000).  First, the party challenging the peremptory strike must establish prima facie case of discrimination.  *Id.* (Citing *Batson*).  To make out a prima facie case, "the defendant must point to more than the bare fact of the removal of certain venire persons and the absence of an obvious valid reason for the removal." *Id.* at 637 (quoting *United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990)).  A party advancing a *Batson* argument ordinarily should "come forward with facts, not just numbers alone." *Id.* (quoting *United States v. Bergodere*, 40 F.3d 512, 516 (1st Cir. 1994)). "[T]he establishment of a prima facie case is an 'absolute precondition' to the prosecution's burden to articulate race-neutral reasons for the exercise of its strikes."  *United States v. Houston*, 456 F.3d 1328, 1335-36 (11th Cir. 2006) (citing

---

[4]"It is not clear whether defendant intends to argue that the allegedly all-white jury who tried his case was not representative. The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand) but an *impartial* one (which it does)." *Holland*, 493 U.S. at 480, 110 S.Ct. at 807; *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995) (Sixth Amendment guarantees the right to be indicted and tried by juries drawn from a fair cross section of the community).  The Eleventh Circuit has stated that in order to establish a prima facie case that a jury selection process does not produce a fair cross-section of the community, a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community, (2) that representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) that the underrepresentation is due to systemic exclusion of the group in the jury selection process." *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005) (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979)); *United States v. Grisham*, 63 F.3d 1074, 1078 (11th Cir. 1995).  The court accepts for sake of argument that defendant can establish the first prong of this standard, that African-Americans comprise a "distinctive group in the community."  However, he has provided no evidence or argument in support of the second and third prongs of this test.

*United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005) (*quoting Central Ala. Fair Hous. v. Lowder Realty Co.*, 236 F.3d 629, 636 (11th Cir. 2000)).  If that is done, the party making the peremptory strike is afforded an opportunity to articulate a non-discriminatory explanation for the strike.  *Lowder Realty,* 236 F.3d at 636. Lastly, the court must determine whether the party challenging the strike has met its burden of proving the existence of purposeful discrimination.  *Id.*

Defendant complains in his reply that there were only three African-American jurors on the entire jury panel: Ms. Turquoise Lett, Mr. Duane Smith Savage, and Mr. Columbus Thompson.[5]  He states that although the record does not establish the race of these prospective jurors, he "distinctively recalls their race because they were the only black people on the panel."  (Doc. 429 at 2). Defendant maintains that because the government used two of its peremptory challenges to strike the only two African-American prospective jurors with whom it was presented, counsel should have made a *Batson* objection.

Assuming for sake of argument that defendant's recollection of the race of the prospective jurors was accurate, a fact that cannot be determined from the record, his recollection of the events is flawed.  He is correct that the government used its third peremptory challenge on Ms. Lett (doc. 149).  Mr. Savage, however, was challenged and stricken by the court, not by the government.  Defendant's earnest belief that a single prospective juror, Ms. Lett, may have been stricken for race-based reasons is insufficient to establish a prima facie case that the prosecution used its peremptory strikes in an unconstitutional manner under *Batson*, *Lowder Realty*, and *Houston*, *supra*.  Absent a prima facie showing, the government would not even have been required to articulate a non-discriminatory explanation for the strike.  It would have been futile for counsel to have attempted to make a prima facie case based on his client's unsupported belief, and it is well established that counsel is not constitutionally ineffective for his failure to advance futile arguments.  *See*

---

[5] Mr. Thompson was not high enough on the jury list to be a candidate for selection.

*Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).  Defendant has thus failed to show that counsel's performance was constitutionally ineffective or that he is entitled to relief on this claim.

### 2.  Failure to request *Pinkerton* instruction

Defendant next contends that counsel was ineffective because he failed to request a supplemental *Pinkerton*[6] instruction. In *United States v. Pinkerton*, the Supreme Court held that a co-conspirator could be guilty of a substantive offense even though he did no more than join the conspiracy, provided that the offense was reasonably foreseeable and was committed in furtherance of the conspiracy. Instructing juries on this concept has come to be known as a *Pinkerton* instruction. Defendant maintains that the district court attributed to him, as an individual member of the conspiracy, the quantity of drugs that was considered to be involved within the entire conspiracy.  This is in accord with *Pinkerton*.  He also claims that had the jury been "properly instructed" it might not have attributed the threshold amount of drugs to him, thus relieving the district court from its obligation to impose the statutory maximum sentence.

---

[6]*Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

The record reflects that the jury was instructed as follows with respect to drug quantity:

> The Defendant is charged in the indictment with conspiracy to possess with intent to distribute certain quantities or weights of the alleged controlled substances. However, you my find the Defendant guilty of the offense if the quantity of the controlled substances for which he should be held responsible is less than the amount or weight charged. Thus the verdict form prepared with respect to the Defendant, as I will explain in a moment, will require, if you find the Defendant guilty, to specify on the verdict your unanimous finding concerning the weight of the controlled substances attributable to the Defendant.

(Doc. 150 at 13).  On the verdict form, the jurors were directed to determine "the amount of cocaine and/or cocaine base <u>involved in the conspiracy.</u>"  (Doc. 151 at 1, emphasis added).  Even a conservative view of the evidence supported the jury's finding that defendant was involved with more than five kilograms of cocaine and over 50 grams of cocaine base.[7]

Furthermore, at least one court has found that counsel would be ineffective for a failure to oppose, rather than a failure to request, a *Pinkerton* instruction:

> A "*Pinkerton* instruction" is, in my experience, never requested by the defense because it allows the jury to find one coconspirator liable for the substantive conduct of another conspirator. It is a theory of liability that expands responsibility. There is no good reason for [defendant] to want a jury instructed consistent with *Pinkerton.*

*U.S. v. Sims*, 898 F.Supp. 643 (E.D. Wis. 1995).

Defendant claims that due to a lack of *Pinkerton* instruction, his sentence was violative of the principles enunciated in *Apprendi v. New Jersey*,[8] in which the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must

---

[7] The PSR attributed 17.76 kilograms of cocaine and 7,624 grams or 7.6 kilograms of cocaine base to the defendant, and defendant did not dispute this (PSR ¶ 108).

[8] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).

be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. at 2362-63. This assertion is without merit as his sentence attained, but did not exceed the statutory maximum.

3.   Failure to request instruction on multiple conspiracies or buyer-seller relationship

Defendant claims that counsel was constitutionally ineffective because he failed to request instructions on multiple conspiracies or buyer/seller relationship, even though such instructions were supported by the evidence.  Defendant alleges that the evidence tended to show that there was more than one conspiracy and that some of the defendants were only involved in a separate conspiracy.

"Generally, a multiple conspiracy instruction is required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *United States v. Woodard*, 459 F.3d 1078, 1085 (11th Cir. 2006) (quoting *United States v. Calderon*, 127 F.3d 1314, 1328 (11th  Cir. 1997)) (internal quotation marks and emphasis omitted.); *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).  The instruction is not required if the evidence only supports finding the single conspiracy charged. *Woodard,* 459 F.3d at 1085 (citing *Calderon*, at 1329).  While it is generally for the jury to determine whether one or several conspiracies existed, whether the defense produced sufficient evidence to sustain an instruction such as a multiple conspiracy is a question of law.  *United States v. Edouard,* 485 F.3d 1324, 1348 (11th Cir. 2007) (quoting *United States v. Chastain*, 198 F.3d 1338, 1350 (11th Cir. 1999) (citations omitted)). In determining whether to give an instruction for multiple conspiracies, the district court "considers whether there is sufficient evidence for a reasonable jury to conclude that some of

the [co-conspirators] were involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." *Id.*

A multiple conspiracy instruction may be required if there is the possibility of transference or "spillover" of guilt. *United States v. Anguiano*, 873 F.2d 1314, 1317-1318 (9th Cir. 1989); see also *United States v. Richerson*, 833 F.2d 1147 1155 (5th Cir. 1987). In such a situation, one defendant argues at trial that he was involved, if at all, in a minor conspiracy that is unrelated to the overall conspiracy charged in the indictment, and thus the instruction is required in order to ensure that there is no "spillover" of guilt from one defendant to another. *Anguiano*, 873 F.2d at 1318. Because there is no problem of "spillover" of guilt from one defendant to another when the defendant stands trial alone, counsel is not ineffective for failing to request such an instruction in this situation. *United States v. Khoury*, 163 F.3d 608 (9th Cir. 1998) (Table, Text in WESTLAW), *Anguiano*, 873 F.2d at 1318, *United States v. Corey*, 566 F.2d 429, 431 n. 3 (2nd Cir. 1977).

The Eleventh Circuit has stated that:

To find that the evidence established a single conspiracy "it is not necessary for each conspirator to participate in every phase of the criminal venture, provided there is assent to contribute to a common enterprise." *United States v. Ghazaleh*, 58 F.3d 240, 244-45 (6th Cir. 1995) (internal quotation marks omitted), *cert. denied*, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 669 (1996). "It is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements.... This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." Id. (citations omitted). Finally, [t]he fact that various defendants entered the conspiracy at different times [,] ... performed different functions[, and] ... participated in numerous separate transactions does not convert a single conspiracy to multiple conspiracies. Furthermore, the fact that coconspirator may change roles in the conspiracy or even depart from the conspiracy may signal only that the single conspiracy has moved to a new phase.

*United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997); see also *United States v. Cusimano*, 123 F.3d 83, 89 (2nd Cir. 1997) (In order to show that the multiple conspiracy instruction should have been given, a defendant must show "both that there was evidence of separate networks operating independently of each other and that he suffered substantial prejudice resulting from the failure to give the requested charge) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 962-63 (2nd Cir. 1990) (internal quotation marks omitted)).

The evidence at trial was of a long term, single conspiracy involving a group of childhood associates who became a group of dealer/distributors of cocaine and cocaine base, for which defendant played the role of supplier. It did not establish the existence of separate networks that were operating independently of each other, as would be required in order to merit such an instruction. *See United States v. Cusimano*. 123 F.3d 83, 89 (2nd Cir.1997). The conspirators had a common goal of distributing cocaine and cocaine base. The drugs were purchased and then distributed to lower level associates who distributed the drugs at street level. There was overlap among the participants and their dealings with each other. See *United States v. Chandler*, 388 F.3d 796, 805-13 (11th Cir. 2004) (concluding that common purpose, connection between multiple objects, and interdependence among co-conspirators demonstrates single conspiracy). Defendant has failed to show that the outcome of the proceedings would have been different had the instruction been given, and he is not entitled to relief.

Defendant also claims that the evidence showed that the indicted co-conspirators only purchased drugs from him when no one else had any to sell to them, thus evidencing only a buyer-seller relationship. *See United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993)("Where the buyer's purpose is merely to buy, and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy

has been shown."); *United States v. Guerra*, 293 F.3d 1279 (11th Cir. 2002) (testimony regarding duration and repetition of transactions establishes conspiracy).

> While "the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement," *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984), an agreement to distribute drugs "may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to [a] purchaser." *United States v. Johnson*, 889 F.2d 1032, 1035-6 (11th Cir. 1989).

*United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005).  The evidence at trial established a continuing relationship between the defendant and the other co-conspirators that was more than a mere buyer-seller relationship.  It also evidenced sales that involved quantities significantly greater than more than would be conducted for personal consumption.  *United States v. Dekle*, 165 F.3d 826, 830 (11th Cir. 1999).

The instruction given by the district court adequately addressed the buyer-seller issue in accord with Eleventh Circuit precedent.  In *United States v. Brazel*, 102 F.3d 1120, 1139 (11th Cir. 1997), the defendant, who had been charged with conspiracy to possess with intent to distribute cocaine base, sought an instruction stating that "[o]ne may know of and assist (even intentionally) a substantive crime without joining a conspiracy to commit the crime."   The court noted that the existence of a conspiratorial agreement may be and most often is proven by circumstantial evidence.  *Id.*  The court cautioned that a defendant's mere presence or association with other individuals did not necessarily prove a conspiracy, and that "a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator." *Id.*  Such an instruction requires acquittal if no unlawful agreement was proven or if the defendant merely advanced a purpose of the conspiracy without knowledge of it, such as in a mere buyer-seller relationship.  *Id.* at 1140.

The jury instruction given in the case at bar was materially similar to the one given in *Brazel*:

> Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of a conspiracy.  Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

(Doc. 150 at 12).  This instruction "adequately covered" the buyer-seller instruction that defendant now claims should have been given.  See *United States v. Daniels*, 135 Fed. Appx. 305, 310 (11th Cir. 2005) (citing *Brazel*, 102 F.3d at 1139).  Counsel was not ineffective for failing to request either of the instructions.

### 4.  Failure to move to dismiss the indictment

Defendant claims that counsel performed deficiently because he did not move to have the indictment dismissed. The alleged basis for dismissal was that the prosecutor "mislead the grand jury" and used "fundamentally unfair tactics."  He claims that the prosecutor repeatedly referred to other individuals who were arrested, prosecuted, and convicted in order to influence the grand jury's decision to indict him, solicited inflammatory remarks from a witness, allowed the witness to provide false testimony, and misled the grand jurors about material facts. Essentially, he contends that the grand jury indicted him based on his reputation as a thief and a full time drug dealer.

Pensacola Police Department Vice Squad Detective Steven Bauer was the only witness to testify before the grand jury.  With respect to defendant Christopher Dees, Detective Bauer testified that two alleged co-conspirators told law enforcement that a kilogram and a half of cocaine that was seized from a motel room they occupied had come from Mr. Dees. (Sealed Doc. 418 at 8).  He further testified that Mr. Dees was believed to have a "connection" or source of supply of cocaine in Atlanta and

possibly Tallahassee, and that Dees had "moved up" in the organization once he got a source of cocaine and was able to distribute multiple kilogram quantities. (Sealed Doc. 418 at 13-14).   Detective Bauer did mention arrests and convictions in his testimony, but these were part of the chronology of events that led to the proposed indictment of the defendant and others, as the individuals who were arrested chose to cooperate with law enforcement and identified co-conspirators.  With respect to defendant's allegation that he was identified as a thief, the detective merely was testifying generally about instances in which the co-conspirators had been seen together.   Bauer suggested that they were not only seen together during "drug incidences" but maybe also thefts, such as "maybe they were a victim of a theft and so-and-so was with them too." (Sealed Doc. 418 at 15).  Neither defendant Dees, nor any other defendant's name was specifically mentioned in this portion of the testimony.   Finally with respect to the allegedly false claims of surveillance, Detective Bauer did testify that the police had conducted surveillance as part of the overall investigation, but he did not state that the surveillance had been specifically targeted towards the defendant.  Therefore, the fact that no one at the defendant's trial testified about police surveillance does not prove that the detective testified falsely in this regard.  Thus, there is no factual basis for defendant's assertion that the detective gave false or misleading testimony.

Furthermore, "dismissal of an indictment ... is an 'extreme sanction which should be infrequently utilized.' " *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir. 1985) (quoting *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir. 1983) (quoting *United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978))).  The *DiBernardo* court went on to say that "the possibility that a witness may have given false testimony before the grand jury does not automatically vitiate an indictment based on that testimony; to dismiss an indictment the district court must also find an abuse of the grand jury process such as perjury or government misconduct."  *Id.* (citing *United States v. Hyder*, 732 F.2d 841, 845 (11th  Cir. 1984); *United States v.*

*Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978) (refusing to "adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that later may prove questionable" ); see also *United States v. Cathey*, 591 F.2d 268, 271-72 (5th Cir. 1979) (holding that absent a finding that perjury was committed, there was no basis for dismissing the indictment).  A court may not dismiss an indictment, even for prosecutorial misconduct, without a showing "'that the violation substantially influenced the grand jury's decision to indict.'" *United States v. Exarhos*, 135 F.3d 723, 726 (11th Cir. 1998) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988), quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring)).  An indictment may be dismissed only in cases "in which the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Exarhos*, 135 F.3d at 726-727 (quoting *Bank of Nova Scotia*, 487 U.S. at 257, 108 S.Ct. at 2374).

After review of the grand jury transcript, the court concludes that even assuming for the purpose of discussion that there was perjury or governmental misconduct with respect to the areas of testimony suggested by the defendant, he can not show that he was prejudiced by the violation.  Detective Bauer's grand jury testimony was that a number of high-level and mid-level participants in a cocaine and cocaine base trafficking conspiracy in Warrington were cooperating with the government and had provided consistent information tending to show that the defendant and his co-defendant were involved in the conspiracy.  The government's case at trial was supported by calling high-level and mid-level participants in the cocaine and cocaine base trafficking conspiracy who provided consistent testimony about the defendant's involvement in the conspiracy.  Therefore, there was neither error nor prejudice in Detective Bauer's grand jury testimony.

### 5.  Prior convictions

Defendant contends that counsel was ineffective for failing to object to the fact that the predicate convictions alleged in the Notice of Enhancement were not alleged in the indictment and proven to a jury beyond a reasonable doubt.  This claim is foreclosed by Supreme Court precedent.  In *Almendarez-Torres v. United States*,[9] the Supreme Court held that the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence.  523 U.S. at 247, 118 S.Ct. at 1233. The Court reiterated this in the seminal case of *Apprendi v. New Jersey*,[10] where, as noted above, it held that, "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added).  And the conclusion remained undisturbed by *Blakely v. Washington*,[11] and *United States v. Booker.*[12]  See *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005).  Thus defendant is not entitled to relief.


Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 414)  be DENIED.

---

[9]  *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

[10]  *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).

[11]  *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[12]  *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

At Pensacola, Florida, this 30th day of August, 2007.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**